## Case No. 1,088.

### BAS v. STEELE.

[3 Wash. C. C. 381.][1]

Circuit Court, D. Pennsylvania. April Term, 1818.

WAR—BLOCKADE—LICENSE TO NEUTRAL VESSEL—PORT REGULATIONS — CLEARANCE — TORTS—EVIDENCE OF PROPERTY—POSSESSION—REGISTRY OF VESSEL—DAMAGES.

1. The laws of the United States do not require a person, in order to entitle himself to a clearance, to produce to the collector, a certificate of his having complied with the inspection laws of the state; unless the law of the state requires it.

[See Boyden v. Burke, 14 How. (55 U. S.) 575.]

2. When one party in a cause wishes the production of papers, supposed to be in the possession of the other, he must give to him notice to produce them. If they are not produced, he may give inferior evidence of their contents; or may draw inferences from their non-production, unfavourable to the other side. But if it is his intention to nonsuit the plaintiff—or if the plaintiff, requiring the papers, means to obtain a judgment by default. under the 15th section of the judicial act, [1 Stat. 82,] he is bound to give the opposite party notice, that he shall move the court for an order upon him, to produce the papers; or, on failure to do so, to award a nonsuit or judgment, as the case may be.

[Cited in Dunham v. Riley, Case No. 4,155; Russell v. McLellan, Id. 12,158; Gregory v. Chicago, M. & St. P. R. R., 10 Fed. 529.].

[See Maye v. Carberry, Case No. 9,339; Bank of U. S. v. Kurtz, Id. 920; Thompson v. Selden, 20 How. (61 U. S.) 194.]

3. No advantage can be taken of the non-production of papers, unless ground is laid, for presuming that the papers were, at the time

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters, Jr., Esq.]

the notice was given, in the possession or power of the party; and that they are pertinent to the issue. In either of the cases, the party to whom the notice was given, may be received, to prove, by his own oath, that the papers are not in his possession or power; which oath may be met, by contrary proof, according to the rules of equity.

[See Garrett v. Woodward, Case No. 5,253.]

4. In an action for a tort to personal property, possession, accompanied by an assertion of ownership, is prima facie evidence of property. Documentary evidence, is only necessary when the ownership is denied, and the production of papers is called for.

[Cited in The Nancy Dell, 14 Fed. 747.]

5. The register of a vessel is not, per se, evidence of ownership.

[Cited in The Nancy Dell, 14 Fed. 747.]

[See U. S. v. The F. W. Johnson, Case No. 15,179.]

6. In an action against the collector of the customs for refusing a clearance, upon a count, stating that the plaintiff was the owner of the vessel—laden with a cargo, of a certain value, the allegation is sufficient, as to ownership of the cargo.

7. In actions of contract, or tort, damages, which materially and necessarily arise from the breach or gravamen, need not be stated; as they are covered by the general damages laid in the declaration. Special damages, not necessarily implied, cannot be recovered, unless specially stated; and, although the plaintiff has given evidence of special damages, without objection, by the defendant, yet the defendant may object to their allowance, on the trial.

8. The general nature of the cargo, being provisions—the blockade of the river Delaware, by the enemy, and a license to the plaintiffs, being neutrals in the war, from the blockading squadron, will not authorize the collector to refuse a clearance; there being no law to authorize such refusal.

9. Whether a neutral, within the territory of one belligerent, commits a crime against that belligerent by an intercourse with the enemy must depend on the nature of that intercourse.

10. If the owner contemplated an illicit intercourse with the enemy—such as to supply him with provisions, the clearance of the vessel might be withheld by the collector.

11. The collector must show probable cause for his suspicions; and if the party, having it in his power to remove the suspicions by evidence, fails to do so, he is not entitled to damages for the refusal of the clearance by the collector.

At law. This action was brought to October sessions, 1813, to recover damages from the defendant, [John Steele,] who was collector of the port of Philadelphia, for refusing a clearance to a Spanish vessel, owned by [Joseph Bas and Escardo] the plaintiffs, who were merchants residing at Havana. The vessel, called Les Dos Amigos, having on board a cargo of sugars, arrived at Philadelphia, early in March, 1813, consigned to Escardo, one of the plaintiffs, who came in her as a passenger. Soon afterwards the blockade of the Delaware, by the British, took place; and the Dos Amigos was detained. The owner of a Spanish vessel, also in the port of Philadelphia, with the consent of the proper authority, went down to the blockading squadron, to obtain permission to sail with a cargo of flour, for Havana; and he was requested by Escardo to ask permission for the Dos Amigos to carry a cargo of potatoes and onions to the same place. On his return, he informed Escardo that this permission was granted; but that it was a verbal license, the British commander having refused to give one in writing. A cargo, consisting of onions and potatoes, the growth of 1813, was immediately purchased by Escardo, the cost of which was 2,163 dollars, 53 cents; and, on the 21st of July, accompanied by the captain of the Dos Amigos, he went to the custom-house; where the captain delivered in duplicate a manifest of the cargo, in the usual form, one copy of which was signed by him, and, with the oath required by law, written out. A clearance was not granted, and the owner and master were informed by the deputy-collector, the defendant being absent, that from the nature of the cargo, it being composed of articles of a perishable nature, it was believed to be intended for supplies to the blockading squadron. It was stated by Escardo, that the vessel had a license from the British commander, to carry the cargo to Havana; and the evidence as to this admission, whether the license was declared to be verbal or written, was contradictory. The deputy-collector required the production of the license; and the plaintiff, Escardo, denied any intention to furnish supplies to the hostile vessels. Two or three interviews between Escardo and the deputy-collector took place; and the clearance not being granted, counsel were employed by the plaintiffs, who demanded from the defendant, a clearance for the Dos Amigos, and notified him of a claim for damages, should he continue its refusal. A correspondence took place on the subject; surveys were held on the cargo on the 27th and 28th of July, and it was found in a perishing state; and on the 2d of August, it was sold under the direction of an auctioneer, for 157 dollars 33 cents. The declaration contained four counts: 1st. For refusing a clearance to the Dos Amigos, laden with a cargo: 2d. For refusing the clearance maliciously: 3d. For refusing the clearance, and stating that the manifest was sworn to by the captain: 4th. For refusing it, and stating that the master was ready, and offered to swear to the manifest. The evidence of ownership of the vessel, was the possession of Escardo, in the name of the plaintiffs; and the reputation of such ownership, at Havana. The fact of the refusal of the clearance, was shown by the correspondence between the counsel of the plaintiffs, and the late A. J. Dallas, Esq., who was counsel for the defendant; in which this refusal was admitted, and the reasons for the same stated. The defendant's counsel had, soon after the suit was commenced, given the plaintiffs notice to produce certain documents and papers on the trial; and, on their being

called for, it was stated by their counsel, that no such documents or papers were in their possession, or existed, with the exception of the log-book called for, which had accompanied the vessel, on her return to Havana; and an account of the particulars of the cargo, and the receipt of the persons from whom it had been purchased, for the cost thereof; which was offered as a bill of parcels.

C. J. Ingersoll, for the defendant, moved for a nonsuit, on the following grounds: 1. That the manifest delivered to the collector, by the captain of the Dos Amigos, was not sworn to. 2. That notoriety of ownership, and possession of the vessel by one of the plaintiffs, for all the owners, was not sufficient to support this action for damages, ex delicto. 3. That according to the provisions of the 15th section of the judiciary act,—2 Laws U. S. p. 65, [Bior. & D. Laws; 1 Stat. 82,]—the non-production of papers, after notice, gives the party calling for them, if defendant, a right to a non pros; if plaintiff, to a judgment by default.

The counsel for the plaintiffs opposed the nonsuit, alleging that one of the counts of the declaration, averred a readiness on the part of the master, to swear to the manifest; and that as the oath was subscribed by the master, the jury might infer that it was sworn to. That notoriety of ownership, and actual possession of a chattel, was the usual and sufficient evidence of ownership; and, certainly, sufficient to permit the question to go to the jury; and that the provisions of the act of congress, relative to the production of papers, applied only where a motion had been made to the court, for an order on the party, to produce the papers, followed by notice thereof, and some evidence that the party called on for them, had them in his possession, and that they were pertinent to the issue.

[Motion denied.]

WASHINGTON, Circuit Justice. With respect to the objections on account of the inspection laws, the answer of the plaintiffs' counsel is sufficient. The act of congress does not require the collector to interfere, unless it appears that he is called on so to do by some state law. As to the ownership of the vessel and cargo, it is a sufficient answer to this motion, that some evidence has been given, which may, in the opinion of the jury, be sufficient to prove this fact; and the rule of this court, and of every court is, that where such evidence is given, the court will not take the cause from the jury. As to the manifests, upon being reminded of the counts in the declaration, which aver a readiness to deliver a manifest, these difficulties disappear. The manifest is not sworn to: it is filled up and signed, but the oath

was not administered; and it would not in this form be sufficient to support an indictment for perjury. But it is sufficient, under these counts, if the master did all in his power—if he showed himself in readiness to take the oath. The only question with us is, whether enough is shown, to allow the jury an opportunity to draw an inference. Two facts are made out now, which did not appear before. The master, with Escardo, was seen to go two or three times towards the custom-house, professing that he meant to go there; and, at that time, the manifest was in the possession of one of them. Taking these circumstances in connexion with the manifest having been left with the collector; and that the collector does not assign as a reason, why the clearance was refused, that the master would not swear to the manifest, —there is enough, from which the jury may infer, that the manifest was delivered to the collector, by the master, and that he was ready to take the oath; and the objection stated, is not that he refused the oath, but that there was a suspicion of an intended infraction of the law, by furnishing supplies to the enemy.

In the former case, the court stated that the assigning of one reason, did not exclude a right in the collector to give another, if the objections arising from the first should be cleared up. The case is now changed; because now it appears, that a manifest may have been signed and delivered to the collector—and, as another reason for refusing the clearance was assigned, this furnishes an additional fact, from which the jury may infer a readiness on the part of the master, to swear to the manifest. The remaining point is important and novel; and has not yet been decided in the supreme court, in this court, or in any other circuit court, so far as we are informed.

It is not difficult to give a construction to the section of the act of congress. When either party wants papers, he must give notice; and he has in view one of these objects: 1st. That if the papers called for, are not produced, he may be enabled to argue against the party not producing them to the jury: 2d. This object may be to obtain evidence from the contents of the papers called for: and, 3d. To move the court for a new suit, or for a judgment by default, as the case may be. But in either case, the party must entitle himself to the benefits of the section, by showing that the party was in possession of the papers called for; and he must also give evidence of the contents of the papers; for it will not do for him only to say what those contents are. The court will require reasonable proof of the possession, and of the pertinency of the papers. If the object of the party is to avail himself of the provisions of the section, so as to move for a nonsuit, or for judgment by default, he must put the party on his guard, and let him know the

consequences of a refusal; and the party receiving such notice, will come prepared to meet it. In any such case, when the party is called on to produce papers, he may make oath that he has them not; and thus extricate himself from difficulty. This is the case in chancery, where the plaintiff charges the defendant with having papers to which he has a right, and the defendant relieves himself by his oath; and this may be met by contrary proof of two witnesses. In every case, the party claiming the papers must give evidence of the relevancy of the papers, and of the opposite party having possession of them. Whenever a judgment by default, or a nonsuit, is intended to be claimed, the notice to produce papers, must give the party information that it is intended to move for a nonsuit, or a judgment by default, as the case may be; and this must hereafter be considered as the rule of the court, under this section of the act of congress.

Nonsuit refused.

The nonsuit having been refused, and the case submitted to the jury, the counsel for the defendant contended—1. That the receiving a license from the enemy of the United States, by the owner of the Dos Amigos, destroyed the neutral character of the vessel, and justified the refusal of the clearance. 2. That as the declaration stated the plaintiffs to be owners of the vessel, "laden with a cargo," this was not a sufficient averment of ownership of the cargo, to authorize a claim for damages for its loss. 3. That there was no evidence to show a demand of a clearance from the collector, after the 21st and 22d of July, and subsequent to the explanations given in the correspondence; and that the failure to make such a demand, as it might have been granted, was an answer to this suit. 4. That a clearance is not a necessary document for a foreign vessel, sailing from a port of the United States; and therefore, the refusal of the clearance was not the cause of the damages sustained by the plaintiffs. The counsel for the defendant cited 1 Chit. Pl. 146, 147, 486, 487; 1 Condy, Marsh. Ins. 407; [The St. Nicholas,] 1 Wheat. [14 U. S.] 431; 4 C. Rob. Adm. 284; 6 C. Rob. Adm. 131; 4 C. Rob. Adm. 65; [The Sally,] 8 Cranch, [7 U. S.] 384.

On the part of the plaintiffs, it was argued —1. That a neutral, not an inhabitant of the place, has a right to obtain a license from the enemy of the nation, when he may wish to proceed to a port in his own country with a cargo, and that such an act was no forfeiture of his neutral character. 2. That the averment in the declaration, that the plaintiffs were owners of the vessel, laden with a cargo, was sufficient; and that if it was not, the jury might give damages for all the consequences of the detention of the vessel by the defendant, even without a direct averment of ownership in the cargo. It was also said, that as the defendant had not objected to the evidence, given by the plaintiffs, of ownership in the cargo; which evidence was intended to apply to that part of the declaration; they could not now object to the effect of such evidence. 3. That a new demand of the clearance was not necessary; and that had the defendant determined to grant a clearance after the explanations, he should have notified the plaintiffs of his readiness so to do. 4. That a clearance is necessary to every vessel sailing on the ocean, to protect her from molestation, and is the usual and proper document for that and other purposes;—that without a clearance, the Dos Amigos would have been arrested by the fort in the Delaware—by the officers of the customs in the district of Delaware—by the gun-boats stationed at the mouth of the harbour; and would have been interrupted by any cruiser she might meet on the ocean.

WASHINGTON, Circuit Justice, charged the jury. This is an action brought by the owners of a vessel, laden with a cargo, against the collector of the port of Philadelphia, for having refused the vessel a clearance, in consequence of which the cargo was lost; and damages are claimed, as a compensation for the same. We will lay the case before the jury, under the following heads, which will embrace all the arguments of the counsel on both sides, and we shall make such observations upon them as apply.

The first question is, was a clearance asked, and refused?

2. Are the plaintiffs the persons to complain of the refusal?

3. Did the plaintiffs perform all that by law they ought to have done, in order to entitle themselves to call for a clearance?

4. To what extent can damages be claimed, if the plaintiffs are entitled to any?

Lastly. Can they recover these damages from the defendant?

1. Was the clearance refused? The correspondence between the parties has been read repeatedly; and as it is the duty of the court to give a construction to written papers, they will observe upon it. The plaintiffs' counsel in their letter to the defendant, complain of the refusal of a clearance to the Dos Amigos; and the answer of the defendant acknowledges the refusal, and justifies it on certain grounds stated therein. This supports the charge of a refusal by the defendant, and that the plaintiffs complained thereof. But if there is any doubt on this subject, Mr. Wilson's acknowledgment removes it. He states, that two persons, one of whom was the master of the Dos Amigos, came to the custom-house, and applied for a clearance, and he having declined to give the explanations asked, the clearance was not granted; and O'Conway states, that at two interviews, the officer was asked if the vessel would be permitted to depart, and he answered that she would not; as the British vessels were in the mouth of the bay, and

the cargo might fall into their hands. But it is said, that if the clearance was refused when first applied for, the subsequent negotiations, between the counsel of the plaintiffs and of the defendant, kept the affair in suspense until the 28th of July, when a new demand should have been made, and was necessary; in order to enable the plaintiffs to recover in this action. This is not the law; nor is it reason. Because, after the refusal of a clearance on the grounds stated, and the plaintiffs had said they would look to the collector for damages, if his suspicions had been removed, it was the duty of the defendant to say to the plaintiffs, I will give the vessel a clearance. If he was not satisfied with the explanations offered by the plaintiffs, to remove those suspicions, he must stand or fall before the jury, by the propriety of the reasons of his refusal. The plaintiffs had done enough.

2. Are the plaintiffs the persons entitled to complain of the refusal?—have they given satisfactory reasons to the jury, to show they are the owners of the vessel? The law has been correctly stated by the plaintiffs' counsel. Possession and assertion of ownership, are sufficient evidence thereof. Documentary evidence is not necessary, unless the asserted ownership is denied, and the party has been called on to produce such documents. The evidence in this case is, that Escardo was here, in possession of the vessel, and asserted he was the owner for all the plaintiffs; and he afterwards proceeds to manifest this, by instituting the suit in the name of all the owners. Longfausse was at Havana, saw the owners there, heard them assert that they were owners of this vessel; and he states, that it was there a matter of notoriety they were the owners. The register of the vessel, if it were produced, would not be sufficient evidence, and would be no more than this, but that it would be in writing; nor would it be equal to this, if it were not accompanied by possession. This is, however, a question of evidence, on which the jury must decide.

3. Did the plaintiffs do all that by law they ought to have done, in order to entitle the vessel to a clearance? What does the law require? That the master shall deliver to the collector, a manifest of the cargo on board the vessel, stating the articles of which the same is composed, and the prices thereof, to be signed and sworn to by him. What is the evidence on this subject? Mr. Wilson, the deputy-collector, states, that "on the 21st of July, 1813, the captain of the Spanish vessel, with a foreigner, not known to him, came to the custom-house. Two outward manifests were laid on the desk at which he stood, either by the captain or the gentleman with him. He took them up and examined them as was usual. He observed to the captain, and to the gentleman with him, that the cargo was of a very perishable nature, and that he doubted whether it could reach

Havana in a state proper for use, and was therefore intended for the British squadron; and he referred particularly to the articles being the growth of that season. They declared they were bona fide destined for Havana, and they withdrew." From this, the following facts appear as applicable to the manifest. Two manifests, filled up, and signed, were placed on the desk of the deputy-collector; were examined by him, and no objections made to them; but he stated a suspicion, that the cargo could not reach Havana, and that, therefore, it was intended for the British squadron. Mr. Dallas states, in his letter, that this would be no obstacle to granting the clearance, if the grounds for suspicion of illicit intercourse were removed. This admits, that the manifest was tendered, and that the captain was ready to swear to it; and the court think it was the duty of the collector to require it to be sworn to, if he thought it necessary. Two manifests were laid on the desk: only one has been produced on notice; and the jury will judge why the other has not been produced. The court has no difficulty in saying, that these circumstances amount to evidence, that the manifest was sworn to, or that the master was ready to swear to it; and that the plaintiffs did all, or were ready to do all, the law required of them.

4. To what extent can the plaintiffs claim damages, in this case, if the jury shall be of opinion they are entitled to damages? The averment in the declaration is, that the plaintiffs "were the owners of a vessel, laden with a cargo;" and it is said, that this is an averment of the ownership of the cargo. This will not do. They ought to have stated the ownership of both vessel and cargo, and the averment in the declaration does not mean this. It would apply as well to a vessel laden with a cargo on freight; and ownership in the cargo does not follow from it. What is the rule of law as to damages? it has been admitted, on both sides, that, whenever the declaration claims damages, whether in contract or in tort, all the damages, which the jury can say arose out of the breach stated in the declaration, may be given, and such is the law. But if the plaintiff means to go further, he must state them specially, as well to give notice, as that, otherwise, the evidence will not fit the declaration, and these must always correspond. It was argued, but not relied on by the plaintiffs' counsel, that this is a rule of evidence and not of compensation; and the defendant having allowed evidence to be given of the value and loss of the cargo, he could not afterwards oppose its effect, in ascertaining the extent of damages. There are some instances, where, after evidence has been admitted, the court will not permit counsel to object to its influence. Thus, when the signatures to a note have been admitted, the party shall not say, you cannot claim damages for the note, because this would be a trick; and

having suffered the note to go to the jury as proved, he shall not afterwards oppose its operation upon them. But whenever the case is, as in the present cause, the rule is otherwise. Does, or does not, the evidence fit the declaration? If it does not, it is now too late to inform the jury they ought not to regard it. What are the damages which arose out of the case stated in the declaration in this cause? The owners of a vessel sue the collector for refusing a clearance of a vessel with a cargo on board. Freight undoubtedly is lost by the prevention of the voyage. If the cargo belonged to any body else, or to themselves, the loss was sustained and may be recovered. The owners of a vessel are equally entitled to freight, to whomsoever the cargo may belong. As to the amount of this loss, it is properly within the province of the jury to ascertain it, and the court will not attempt to state it.

Lastly, can these damages be recovered from the defendant? The defendant has produced evidence of circumstances to justify his conduct; and various grounds of defence have been taken by his counsel. In the origin of of the case, but one objection was made to granting the clearance—a suspicion of illicit intercourse with the enemy; subsequently there was another—that the plaintiffs had in their possession a license from the blockading squadron, which it was their duty to produce, to show whether it was an authority for the vessel to proceed to Havana. The grounds of suspicion of illicit intercourse were, the general nature of the cargo, it being provisions;—the blockade of the Delaware, and sailing under a British license. All these are put together, because they admit of one answer; they did not justify the collector. A neutral vessel, in a blockaded port, takes a cargo on board, and asks leave to depart. The collector says no: you have a cargo of provisions and a license. The answer is, I have a right to go; and what is it to you if I have a license? The blockading squadron may prevent it; I have a right to run the risk, and you cannot interfere. The nation may prevent it, but an executive officer cannot. If congress did not think proper to make such a law, the collector could not make it, and say, you shall not go. As to the license, the plaintiffs had a right to take it; and the blockading squadron had a right to give it; and the reasons given by the supreme court, against an American citizen taking a license, do not apply in such a case. The American citizen, by taking a license, takes side with the enemy; and as, in time of war, every member of the nation is considered at war, he shall not be at peace. But these reasons do not apply to a neutral. He can go into a blockaded port, and can go out, if the blockading force will permit it; and it is not for any officer of the port to say, he shall not go. The act of congress, relative to licenses from the enemy, does not apply,—

2FED.CAS.—63

First, because it was passed after the cause of action arose. Secondly, because Escardo was not an inhabitant of this country, as no person is an inhabitant of a place, but one who acquires a domicil there; otherwise, all neutral trade would be destroyed. Going to a place to obtain a cargo, and coming away, does not give a neutral a domicil, or make him an inhabitant. If the circumstance of the blockading squadron having been at the time in the mouth of the Delaware, is a justification of the defendant, it would amount to this; that, although congress had repealed the embargo, the collector had the same powers he possessed when the embargo was in force. Suppose any citizen had attempted to go; could the collector stop him because he might fall in with the enemy? If no law has been produced to authorize the collector to refuse it, he ought to have granted the clearance. Intercourse with the enemy has been alleged against one of the plaintiffs, and this was never thought of by the collector, but is the suggestion of counsel. Intercourse with the enemy, by citizens of the United States, would have been improper; but in a neutral, it is not necessarily a criminal act. Such intercourse might be criminal, as giving information; but when it had been ascertained, that it amounted to no more than procuring a license to go to sea, with a cargo, it was not criminal. But, suppose it had been so; what had the collector to do with it? The vessel might have gone out, and Escardo have been indicted. The case of The Tulip, [Case No. 14,234,] has no application. There, the American vessel carried out important despatches from the British minister, which, if she did not, at sea, fall in with a conveyance for them, she was to land in some part of England or Ireland; and the court had no difficulty in condemning her.

The case comes to this:—the collector had two conflicting duties imposed upon him; one to the individual who asked a clearance; the other to his country. If the destination of the vessel was the enemy, he had a right to refuse a clearance; if not, and there were not circumstances to warrant his suspicions, he had no such right. He was to judge upon circumstances, and to proceed on such ground, as that any just man could say, there did exist reasons sufficient to authorize the belief, that this was the destination of the vessel; and if the jury, carefully and coolly examining all the reasons, think he had just grounds for the suspicion, they will find a verdict in his favour.

The court then went into a minute examination of the evidence which had been adduced by the defendant; and concluded by stating; that if, upon the facts, the jury thought the defendant had just and reasonable grounds for his conduct, he was not answerable; but if they did not think so, they would find for the plaintiffs.

After the court had concluded the charge, Mr. C. J. Ingersoll requested that the court would instruct the jury, whether, if the license to the Dos Amigos was or was not in writing, and the deputy-collector misunderstood the plaintiff Escardo in relation to it, it was not the duty of Escardo to explain the circumstance.

WASHINGTON, Circuit Justice. If Mr. Wilson, the deputy-collector, said to Escardo, I understand you have a license in writing, and I ask you to show it, and he was silent and did not explain it, the consequences would be the same, and the defendant would have been justified. Still, the jury will have to determine on the accuracy of Mr. Wilson's recollection; not on his veracity, for that has not been doubted. The court say nothing about the point which was mentioned, whether the collector is answerable for the acts of his deputy. He is certainly answerable for all his acts. ·

Verdict for plaintiffs.

[NOTE. See Bas v. Steel, Case No. 1,087; motion for nonsuit.]

---

BASCADORE, (UNITED STATES v.) See Cases Nos. 14,535 and 14,536. ·