## UTAH CONST. CO. v. MONTANA R. CO.

### (Circuit Court, D. Montana. January 29, 1906.)

### No. 714.

1. DISCOVERY—PRODUCTION OF BOOKS AND PAPERS—REMEDIES—MOTION.

In a suit in equity for an accounting and to foreclose a mechanics' lien for railroad construction work, complainant was entitled to discovery of books and papers in defendant's possession necessary to establish complainant's cause of action on a motion supported by affidavit before trial.

[Ed. Note.—For cases in point, see vol. 16, Cent. Dig. Discovery, §§ 35, 89.]

2. SAME—ANSWER UNDER OATH—WAIVER.

Where complainant filed a bill for an accounting and foreclosure of a mechanic's lien, the fact that the bill waived an answer under oath did not amount to a waiver of complainant's right to discovery.

3. SAME—AFFIDAVIT—DESCRIPTION OF PAPERS.

Complainant sued for an accounting to foreclose a mechanic's lien for railroad construction work done under a contract. Defendant denied the indebtedness, and filed a cross-bill to recover damages for complainant's failure to complete the work, which complainant answered, alleging a change of route and consequent delay, and that defendant had paid certain monthly estimates after the time limited by the contract for the completion of the work had expired, whereupon complainant moved to inspect books, papers, and documents in defendant's possession, described as those relating to final estimates, showing quantities and classifications allowed throughout the work, maps of the railroad line, and the building, cross section, and other notes, particulars of haul, showing number of cubic yards moved, distance hauled, and notes of classification allowed for current estimates and final estimates, prepared by defendant's engineer, as provided by the construction contract, all of which were alone in the possession of defendant. *Held*, that the character and materiality of the papers desired to be produced was sufficiently disclosed.

On Motion for an Inspection of Books and Papers. Granted.

T. J. Walsh, for complainant.

Wm. Wallace, Jr., and M. S. Gunn, for defendant.

HUNT, District Judge. Suit in equity to foreclose a mechanic's lien filed by the complainant upon a certain railroad owned by defendant to secure payment alleged to be due complainant by defendant on account of work done by the complainant in the construction of a railroad line, the said work having been done under and pursuant to a certain construction contract entered into between the parties to the suit. Defendant answered, denying any indebtedness over and above a certain sum, and generally denying the averments of complainant's bill. Defendant filed a cross-bill seeking to recover damages of complainant on account of an alleged failure to complete the work contemplated by the contract. Complainant answered the cross-bill, alleging, among other things, the changing of the route of the railroad from that contemplated when the contract was entered into, and consequent delay. Complainant also pleaded that defendant had paid certain monthly estimates after the time limited by the contract for the com-

pletion of the work. The issues were framed, and complainant now moves the court for an order requiring the defendant to permit the complainant to inspect certain books, papers, and documents in its possession, and to take copies of the same. The books, papers, and documents relate to the final estimates, showing quantities and classifications allowed throughout the work, maps of the railroad line, and the building, cross-section, and other notes, particulars of haul, showing number of cubic yards moved and distance hauled, and notes of classification allowed for current estimates and final estimates prepared by the engineer of the defendant company. The affidavit accompanying the motion states that all such documents and papers were prepared by or under the direction of the engineer of the defendant company, referred to in the contract between the parties, a copy of which is made a part of the bill of complaint, and that all maps, cross-sections, and particulars were prepared and preserved in order that a record might be made and kept of the work done by the complainant under its contract, and in order to ascertain accurately the amount due to the complainant and that complainant has not in its possession any of the maps, documents, or papers that it desires to inspect, but that defendant has all of them. Complainant further says that it is material and necessary to its case that it have an inspection, and permission to take copies of the documents, papers, and maps referred to, and that it cannot safely proceed to trial without such inspection and copies. The defendant objects to the application and motion for production and inspection, upon the ground that the court has no power to grant such motion; because the showing made is insufficient to authorize the making of the order requested; because it is apparent that the application and motion are in the nature of what is termed a "fishing expedition"; and because it does not appear that the books, papers, and documents contain any evidence in support of the allegations in the bill of complaint, or defense to the cause of action stated in the cross-bill.

From this statement it will be seen that the complainant desires an order which will entitle it to the benefit of certain writings in defendant's possession which will aid it in proving the allegations and charges in its bill. Refreshing the mind by reading English and American commentaries and decisions upon discovery, it becomes clear that the growth of the practice has been steady, and we find that judges and text-writers have gradually construed its use in a liberal and broadening manner, while legislative bodies have simplified the methods by which the remedy may be invoked and applied. The ways of business are now very largely by records. Organization into corporate enterprise necessitates the writing down of business transactions by entries in books. Such entries are usually made contemporaneously with the transactions themselves; hence they become the very best evidence whereby the truth can be ascertained, and equitable results reached. The courts should be careful to protect persons against unreasonable, needless, or improper exposure of letters, books, and papers which are evidence in their possession; but where a transaction is, to a very great extent, in writing, and where production and

inspection of the writings in the possession of one's opponent are material to sustain complainant's bill, it is a common right that complainant generally has to obtain an order which will enable him to a discovery of all facts within the knowledge of his adversary, and to the production and inspection of all documents in the possession of the party against whom the application is made, which may assist him in making out his case at the hearing. The right of a subpœna duces tecum is not sufficient relief in many cases. It is often impossible for a complainant to examine books and papers produced at the trial for the first time; and, as the administration of the law progresses, courts should consider the necessity for economizing labor, expense, and time. Again, complainant's rights may not be sufficiently protected by subpœna duces tecum, inasmuch as a notice to produce does not compel a party to produce the document desired. Refusal would be but a ground for the introduction of secondary evidence of the contents of the papers called for. Why is it not proper, therefore, why is it not in the interest of right, to permit an inspection and investigation of such matters as are relevant before trial? That such a practice was known in England is well demonstrated by Sutherland on Books, Papers, and Documents, where many English decisions are quoted from. I particularly regret not being able to read Wigram on Discovery, as nearly all English and American judges refer to that book with respect and frequency.

The practice of compelling a party to produce for inspection may be by motion or affidavit, or petition even more formal. There is undoubtedly a difference among authorities upon this point. But with the sanction of writers who cite eminent English judges to sustain them, I shall follow what appeals forcibly to me as having the better reasoning.

Foster's Federal Practice (section 267) says that in equity and at common law either party may, upon motion supported by affidavit, which affidavit may be controverted, compel a production for inspection. Coit v. North Carolina Gold Amal. Co. (C. C.) 9 Fed. 577.

In Watson v. Renwick, 4 Johns. Ch. (N. Y.) 381, Chancellor Kent denied a prayer "for an order" that defendant deposit under oath with an officer of the court all the books, papers, letters, accounts, memoranda, vouchers, and writings, as called for by the bill, and that plaintiffs might have leave to examine, take copies, and make extracts from the same. That was a bill for discovery and account, with a prayer in the bill that defendant set forth a list or schedule of the books, papers, etc. The petition stated that the defendant had not by her answer made the list, and a motion was made that she be ordered to deposit under oath for the inspection of the plaintiffs all the books, papers, etc., called for by the bill. Chancellor Kent discussed the answer, and decided that it did not lay a sufficient foundation for the motion, according to what was understood to be the settled doctrine and practice in Chancery. He said:

"To entitle the plaintiff before hearing or publication or issue joined to call for the inspection of papers, it is not sufficient that there has been a general reference to them in the answer. They must be described with

reasonable certainty in the answer or in the schedule annexed to it. so as to be considered by the reference as incorporated in the answer, and they must be admitted by the answer to be in the defendant's possession or power; and it must also appear that the plaintiff has an interest in the production of the papers, or books, or instrument sought after."

In the opinion of the chancellor, he cites a number of English cases, among them that of Herbert v. Dean and Chapter of Westminster, 1 P. Wms. 773, where an order was granted that defendant should produce certain books, and the motion was allowed. So in Bettison v. Farringdon, 3 P. Wms. 363, it is stated that Lord Talbot confirmed an order on the defendant for the production of deeds. Production and inspection was also ordered in Gardiner v. Mason, 4 Bro. 479, and in Shaftsbury v. Arrowsmith, 4 Ves. 66. Chancellor Kent deduces the practice to be that, where there is a motion to produce letters and other documents referred to in the answer, it must appear that the answer contains an admission that the documents in question were in the custody of the defendant; and he states the rule for producing papers rests upon the principle that the papers are by reference incorporated in the answer, and become a part of it. But the practice of securing an order for production by motion is certainly recognized by the chancellor, and the primary authorities he cites in his opinion.

In Barton's Suit in Equity (page 122), under the title of "Interlocutory Proceedings," the practice is given by a form of order requiring defendant "on motion," etc., to leave with the register of the court the several books of account, letters, papers relating to the matters in the cause, "and the complainant, his solicitor, agent, or counsel, is to be at liberty to inspect and peruse the same, and to take copies thereof or extracts therefrom," etc.

In Adam's Equity (*page 349) the practice by motion is recognized; the author saying:

"The production of documents is ordered for completion of the discovery in the defendant's answer. The discovery obtained from the answer itself is not the whole to which the plaintiff is entitled. It gives him a statement by the defendant on oath as to all facts to which he was interrogated, and also a schedule of all documents in the defendant's power relating to the subject-matter of the suit. But the documents still remain to be examined, and the information which they contain is frequently the most important part of the discovery. For the purpose of obtaining such examination, the plaintiff is entitled, either before or after the sufficiency of the answer has been determined, and without prejudicing any question on that point, or at any subsequent period in the cause, to move that 'the defendant may produce, and that the plaintiff may have liberty to inspect and take, copies of all the documents so scheduled, and that the same may be produced before the examiner and at the hearing of the cause.' Upon this application an order will be made that they shall be deposited with the clerk of records and writs, or, if a special reason be shown—e. g., their being in constant use in the defendant's business—then in the defendant's own office. The doctrines by which production is regulated have been already discussed in reference to discovery, viz.: (1) The right of requiring it is for the purpose of discovery alone, and does not depend on nor will be aided by a title to possess the documents themselves. (2) The existence of the right must be shown from admissions in the answer that the documents are in the defendant's possession or power, and that they are of such a character as to constitute proper matter of discovery within the ordinary rules. (3) It is a right belonging to a plaintiff only, although a defendant

may occasionally be permitted on special grounds to delay his answer until some document material for making out his defense has been produced by the plaintiff."

In Mitford's & Tyler's Pleading & Practice in Equity (page 450) one of the objects of interlocutory orders is stated to be the production of documents. I quote from the text:

"The defendant is bound, if required by the plaintiff, to set forth in his answer a list of all documents in his possession which can furnish evidence in regard to the matters in question. The production of these documents is necessary to the completion of the defendant's answer. The discovery obtained from the answer itself is not all to which the plaintiff is entitled. It gives him a statement by the defendant on oath as to all facts to which he is interrogated, and also a list or schedule of all documents within the defendant's power relating to the subject-matter of the suit. But the documents still remain to be examined, and the information which they contain is frequently the most important part of the discovery. For the purpose of obtaining such examination, the plaintiff is entitled, either before or after the sufficiency of the answer has been determined, and without prejudicing any question on that point, or at any subsequent period of the cause, to move that the defendant may produce, and that the plaintiff may have liberty to inspect and take, copies of all the documents scheduled in the answer, and that they may be produced before the examiner and at the hearing of the cause. Upon this application an order will be made that the documents be deposited with the proper officer of the court, or, if a special reason be shown, as that they are in constant use in the defendant's business, then in the defendant's own office."

In Daniell's Chancery Pleading & Practice (*page 1817) the learned author says that it is the practice of the court of chancery to allow a party to apply before the hearing of a suit for the production of documents relevant to the matters in question which are in the possession or power of the opposite party, and lays it down that the power to order the production of documents arises out of "that general jurisdiction for the purpose of discovery which in all proceedings in equity constitutes an important feature."

As pertinent to the point under discussion, I quote as follows:

"The right of plaintiff to obtain a knowledge of the contents of documents in the defendant's possession was formerly exercised by the bill being so framed as to call upon the defendant to set forth the short contents of the deeds in question or to produce them. If, then, upon the coming in of the answer, the defendant admitted the possession of certain deeds, and described them so that they could be identified, the court, unless sufficient disclosure had been made of their contents by the answer, would have ordered them to be produced. The expense of setting out the contents of a deed in the answer in some respects modified this practice, and it became the custom for the plaintiff to charge generally in his bill that the defendant had deeds and documents relating to the matters in question in his possession. Upon this charge, interrogatories more or less searching, according to the nature of the case, were usually founded, so as to extort from the defendant a clear admission of the possession of the required documents; and, if such an admission were obtained, it became competent for the plaintiff to apply for an order that the defendant might produce the required documents. Under the present practice, however, the court may, upon the application of the plaintiff, in any suit, whether the defendant may or may not have been required to answer the bill, or may or may not have been interrogated as to the possession of documents, make an order for the production by any defendant upon oath of such of the documents in

his possession or power, relating to matters in question in the suit, as the court shall think right; and the court may deal with such documents, when produced, in such manner as shall appear just. It is therefore no longer necessary that the defendant should admit the possession of documents in his answer before production can be obtained, and, although production can still be obtained on an admission in the answer, exceptions thereto, on the ground that the defendant has not fully answered the interrogatory as to documents, will be discouraged."

In Pomeroy's Equity Jurisprudence (section 205) the author writes that it is well settled that the matter of the production and inspection of documents depends upon the same principles and doctrines which govern discovery in general. To support his text, he says that, under the original chancery practice, interrogatories are inserted in the complainant's bill, asking the defendant whether he has any documents, or such and such particular documents, in his possession. If defendant's answer admits possession, an order is made on the plaintiff's motion for their production, so that they may be inspected. "Under the more recent practice, the defendant's admissions are made in his answer to interrogatories filed, or in his affidavit made in reply to the plaintiff's motion." Again, in section 206, Pomeroy states that the production of documents rests wholly on the defendant's own admissions, contained either in his answer, or in his answers to interrogatories, or in his affidavit.

Complainant should not be denied what it asks for because in its bill answer under oath was waived. If its bill were one purely for discovery, without prayer for relief by decree, waiver of answer under oath would be deemed waiver of any discovery that might have been sought in the same bill. But complainant seeks an accounting and decree of foreclosure of a mechanic's lien. His bill is therefore one for relief by decree. Now, however, by motion, he asks for what may be called discovery, though technically it is but a mode of giving aid in the progress of the suit. It becomes difficult sometimes to distinguish between discovery and relief by decree, although they are different things. Production of documents may be relief or discovery, as the facts upon which a complainant relies may warrant. Where one prays for inspection and production, claiming a right of ownership of the documents required to be produced, an order of production is granted as relief; while if he prays an order upon the ground that the answer discloses the existence of documents containing evidence which is material to his case, it is called discovery. Langdell on Equity Pleading, § 197. Keeping this distinction in mind, the authorities as to the practice to be pursued may be more easily distinguished. They will show that where production is sought as relief, decree is the only mode of securing it; but if the production of documents is sought for evidentiary purposes, a motion before trial may be proper. The distinction appears logical and substantial, for in the one case the court determines the right after hearing upon pleadings and proofs; in the other, the right is dependent upon whether the contents of the bill and answer disclose right to production of evidence in defendant's possession, which appears to be relevant to the matter at issue.

Langdell (section 201) says that the term "relief," as often used in equity, has reference to the kind and degree of aid furnished to the plaintiff; whereas in truth it has reference to the mode in which the aid given. If given in an answer, he calls it "discovery"; if by decree he calls it "relief"; if by motion and order, he says it has no specific name, as he regards a motion and order as but a proceeding to dispose of an incidental or collateral question, arising during the progress of a suit, the decision of which affects the suit only indirectly. But whether classified under "discovery" or without specific name, the practice of compelling production is recognized.

Story, in his book on Equity Pleadings (section 859), assumes that production and inspection may be had on motion.

In the learned opinion of Judge Hammon in Ryder v. Bateman (C. C.) 93 Fed. 31, the court recognized that there had been "a good deal of conflict" on the subject of discovery and production of documents, and out of the differing rules held to the view that the petition in that case did not justify the granting of the motion for production. The facts as there disclosed on the face of the petition showed that what complainant really wanted was to see a deed described before she chose her defense as between forgery and a genuine signature obtained under circumstances which invalidated the deed for some fraud committed against defendant. The case on its facts, therefore, is very unlike this one. There discovery in its full meaning was sought before answer was filed, while in the case at bar an order for production is asked, not to predicate a bill or answer upon, but as an aid to proof of the allegation already made.

An examination of the bill and answer discloses that the papers and documents which complainant wishes to inspect are material. The motion, too, is quite specific in naming the particular papers to be produced, and they all appear to relate to the matters involved in the issues made. It is difficult to reach an entirely satisfactory conclusion as to what is really the approved practice, without access to many English books. But, after reading all I can find, my best judgment is that, under the facts disclosed, complainant is entitled to have the production and inspection moved for, and that the order, in accordance with recognized chancery practice, may be granted, without infringement of defendant's rights of property.

Defendant must therefore reply to the complainant's affidavit. This it may do within five days.