## CASSATT et al. v. MITCHELL COAL & COKE CO.

### (Circuit Court of Appeals, Third Circuit. January 2, 1907.)

### Nos. 6, 7, and 8.

1. **WRIT OF ERROR—FINAL DECISION—DEFINITION.**

    The term "final decision," as used in the judiciary act (Act March 3, 1891, c. 517, § 6, 26 Stat. 828 [U. S. Comp. St. 1901, p. 549]), authorizing the review of a final decision on a writ of error, etc., is equivalent to the terms "final decree," or "final judgment," used in the statutes preceding the judiciary act.

2. **SAME—DISCOVERY—ORDER.**

    Where, in an action against a railroad company alone for alleged violation of the interstate commerce act, plaintiff applied for and obtained an order entered against certain of the railroad officers and employés, requiring production before and at the trial of books and papers alleged to contain information relative to the granting of rebates, such proceeding was collateral to the main action, and the order, in so far as it required production before the trial, constituted a "final decision," and was reviewable on a writ of error.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Appeal and Error, § 510.]

3. **DISCOVERY—STATUTES—CONSTRUCTION—PARTIES.**

    Where an action was brought against a railroad company alone for alleged violation of the interstate commerce act, the corporation's officers and agents were not "parties" within Rev. St. § 724 [U. S. Comp. St. 1901, p. 583], authorizing federal courts, on notice, to require the "parties" to produce books or writings in their possession or power which contain evidence pertinent to the issue, etc.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 16, Discovery, § 121.]

4. **SAME—PRODUCTION BEFORE TRIAL.**

    Rev. St. § 724 [U. S. Comp. St. 1901, p. 583], declares that on the trial of actions at law United States courts may require the parties to produce books or writings in their possession or power containing evidence pertinent to the issue in cases, and under circumstances where they might be compelled to produce the same by ordinary rules of proceedings in chancery, and, if defendant fails to comply with such order, the court may on motion give judgment against him by default. *Held*, that such section did not authorize an order requiring a party to produce books and papers before trial, but, if such relief is desired, it must be obtained by bill of discovery.

5. **CORPORATIONS—POWERS—FRANCHISES.**

    A corporation is not a natural person, but is a creature of the state, possessing no powers or franchises except those conferred by the state.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §§ 1, 1515.]

6. **COMMERCE—INTERSTATE COMMERCE—REGULATIONS—CORPORATIONS.**

    When a corporation engages in interstate commerce, it subjects itself to the regulative provisions concerning such commerce constitutionally prescribed by Congress.

    Buffington, Circuit Judge, dissenting on the ground that the court has no jurisdiction.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

George Patterson and John G. Johnson, for plaintiffs in error.
Joseph Gilfillan and George S. Graham, for defendant in error.

Before GRAY and BUFFINGTON, Circuit Judges, and LANNING, District Judge.

LANNING, District Judge. The record of this case shows that the Mitchell Coal & Coke Company, plaintiff, has commenced an action at law in the Circuit Court of the United States for the Eastern District of Pennsylvania against the Pennsylvania Railroad Company, defendant, to recover from the defendant damages for its alleged violation of sections 2 and 3 of the interstate commerce act, approved February 4, 1887, by discriminating against the plaintiff in the allowance of freight rates on coal and coke. The defendant filed a plea that it was not guilty. After issue was thus joined, and before the time for the trial of the action, the plaintiff filed in the Circuit Court a petition, in which, after setting forth the nature of the action at law, and declaring that the defendant, and Alexander J. Cassatt, president, John B. Thayer, fourth vice president, and 10 other specifically named officers and employés of the defendant, had in their possession or power certain books and papers containing evidence pertinent to the issue, there was a prayer for an order requiring the defendant and its said officers and employés to produce said books and papers at the trial, and also for inspection by the plaintiff's representatives before trial. The application for the order was based on section 724 of the Revised Statutes [U. S. Comp. St. 1901, p. 583], which is as follows:

"In the trial of actions at law, the courts of the United States may, on motion and due notice thereof, require the parties to produce books or writings in their possession or power, which contain evidence pertinent to the issue, in cases and under circumstances where they might be compelled to produce the same by the ordinary rules of proceeding in chancery. If the plaintiff fails to comply with such order the court may, on motion, give the like judgment for the defendant as in cases of non-suit; and if a defendant fails to comply with such order the court may, on motion, give judgment against him by default."

On presentation of the petition to the Circuit Court a rule was allowed requiring the defendant and its officers and employés named in the petition to show cause before the court on a certain day why they "should not produce on the trial of this cause" the books and writings above referred to, and also why they should not produce them at a certain time and place before trial "and permit the plaintiff, its counsel and accountants to inspect the same and take such copies as they may deem proper." The defendant answered the petition, setting forth (1) that the action was for the recovery of damages in the nature of penalties, and therefore that the defendant was not obliged to produce its books and papers either before or at the trial; (2) that, even if the action were one in which the defendant could be required to produce its books and papers at the trial, it could not be required to do so before the trial; (3) that the petition did not describe with sufficient particularity the books and papers the production of which was desired, or state the facts which the books and papers would tend to prove; and (4) that the defendant could not produce any books which would show the rebates and drawbacks alleged to have been allowed to other companies, because they had not been so kept as to show any such allowances. With the petition and answer before it, the Circuit Court, on the return of the rule to show cause, "adjudged, ordered, and decreed" that Alexander J. Cassatt, president, John B. Thayer,

150 F.—3

fourth vice president, and the 10 other officers and employés of the defendant, "produce on the trial of this cause" the books and papers described in the petition, and also that they produce them before trial at a specified time and place for the inspection of the plaintiff with leave to the plaintiff to make copies thereof. This order is now brought before us for review on a writ of error sued out by Alexander J. Cassatt, John B. Thayer, and the 10 other officers and employés of the defendant company.

At the threshold of the case we are confronted with the question: Have we power to review the order on this writ? The defendant in error, the Mitchell Coal & Coke Company, contends that we have not, and moves for the dismissal of the writ on the ground that the order is not a "final decision" within the meaning of section 6 of the judiciary act of March 3, 1891 (26 Stat. 828, c. 517 [U. S. Comp. St. 1901, p. 549]). The expression "final decision" used in that section, is equivalent to "final decree" or "final judgment" used in the statutes preceding the enactment of the judiciary act of 1891. Brush Electric Company v. Electric Improvement Company, 51 Fed. 560, 2 C. C. A. 373. It is conceded that the writ must be dismissed if the order brought up by it is an interlocutory, and not a final, judgment. What constitutes a final judgment or final decree has often been the subject of discussion by our federal courts. For the present purpose it will be sufficient to refer to some of the cases in which it has been held that the judgments or decrees under review in appellate tribunals were final.

In Forgay et al. v. Conrad, 47 U. S. 201, 12 L. Ed. 404, there was a motion to dismiss an appeal from a decree in equity. The bill of complaint had been filed by an assignee in bankruptcy to secure a decree setting aside, as fraudulent, deeds made by the bankrupt for his lands and slaves. A decree was ultimately secured setting aside certain of the deeds made to certain of the defendants in the suit, and providing "that the complainant do have execution for the several matters aforesaid in conformity with law and the practice prescribed by the rules of the Supreme Court of the United States." The decree also contained a clause directing a master to take an account of the profits of the lands and slaves ordered to be delivered up, and provided that:

"So much of the said bill as contains or relates to matters hereby referred to the master for a report is retained for further decree in the premises."

Two of the defendants in the suit to whom deeds of conveyance had been executed, whose deeds were set aside as fraudulent, appealed from this decree. The other defendants did not appeal. It was urged before the Supreme Court that the decree was not final. Chief Justice Taney said:

"Undoubtedly it is not final in the strict, technical sense of that term. But this court has not heretofore understood the words 'final decrees' in this strict and technical sense, but has given to them a more liberal, and, as we think, a more reasonable, construction and one more consonant to the intention of the Legislature."

Further on in the opinion he said:

"When the decree decides the right to the property in contest, and directs it to be delivered up by the defendant to the complainant, or directs it to be sold, or directs the defendant to pay a certain sum of money to the complain-

ant, and the complainant is entitled to have such decree carried immediate-ly into execution, the decree must be regarded as a final one to that extent, and authorizes an appeal to this court, although so much of the bill is retained in the Circuit Court as is necessary for the purpose of adjusting by a further decree the accounts between the parties pursuant to the decree passed."

It was accordingly held that the decree was a final one from which an appeal would lie.

Hinkley v. Gilman, etc., Railroad Co., 94 U. S. 467, 24 L. Ed. 166, was a foreclosure suit. On April 8, 1876, a final decree was rendered in that suit; Hinkley having previously been appointed receiver therein. The mortgaged property was sold under the decree and thereafter, on the settlement of the receiver's accounts, he was found to be indebted in the sum of over $18,000, for which a decree was entered against him, directing him to pay the sum so found against him into court by a certain day. From this decree he appealed. It was contended that he was not a party to the foreclosure suit, had no personal interest therein, and therefore could not prosecute an appeal. But Mr. Chief Justice Waite said:

"The receiver cannot, and does not, attempt to appeal from the decree of foreclosure, or from any order or decree of the court, except such as relates to the settlement of his accounts. To that extent he has been subjected to the jurisdiction of the court and made liable to its orders and decrees. He has, therefore, the corresponding right to contend against all claims made against him. For this purpose he occupies the position of a party to the suit, although an officer of the court, and, after the final decree below, has the right to his appeal here. In this case the final decree has been given, and the case is properly here upon the appeal as prayed and allowed."

In Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157, the complainant, a holder of bonds of the Florida Railroad Company, filed a bill in equity on behalf of himself and the other bondholders against certain parties who, it was alleged, were illegally dissipating the property of the company. The complainant secured the relief he sought by a decree which took the management of the property out of the hands of the defendant trustees and put in into the hands of the agents appointed by the court. A great amount of property was thereby saved to the complainant and his co-bondholders. After this result had been secured he filed a petition praying for the payment to him out of the funds of a sum sufficient to cover his expenses and for his personal services. The court made an order on this petition, allowing to the petitioner his expenses and a sum for personal services. From this order an appeal was taken. The objection was interposed that the order was not a final decree from which an appeal would lie. But Mr. Justice Bradley held that it was, saying:

"Though incidental to the cause, the inquiry was a collateral one, having a distinct and independent character, and received a final decision. The administration of the fund for the benefit of the bondholders may continue in the court for a long time to come; dividends being made, from time to time, in payment of coupons still unsatisfied. The case is a peculiar one, it is true; but under all the circumstances we think that the proceeding may be regarded as so far independent as to make the decision substantially a final decree for the purposes of an appeal."

In Brush Electric Co. v. Electric Improvement Co., 51 Fed. 557, 2 C. C. A. 373, the California Electric Light Company and the San

Jose Light & Power Company commenced a suit in equity against the Electric Improvement Company for an ·infringement of a certain patent, and joined with them as a plaintiff the Brush Electric Company, without that company's consent. After the bill of complaint had been filed in the Circuit Court the Brush Electric Company moved for a dismissal of the suit as to it. A hearing was had on affidavits introduced by the Brush Electric Company and the California Electric Light Company bearing on the question of the right of the latter company to use the name of the Brush Electric Company in the suit. The question of fact was considered and determined upon the affidavits. Questions of law were also presented and decided. The court by its order overruled the motion to dismiss. From this order the Brush Electric Company took an appeal to the Circuit Court of Appeals for the Ninth Circuit. That court held that the order should be deemed a final one from which an appeal would lie, saying that the matter presented for consideration was not one presented by the bill of complaint or sought to be determined by it. In speaking of final decisions, which determine all the questions raised on the face of the pleadings, it was said:

"Considering the construction given by the Supreme Court to the terms 'final decisions,' 'judgments,' or 'decrees,' we reach the conclusion that the term 'final decision' in said statute [the judiciary act of 1891] under consideration does not mean necessarily such decisions or decrees only which finally determine all the issues presented by the pleadings; that, while these are undoubtedly final decisions, the terms are not limited to them, but also apply to a final determination of a collateral matter distinct from the general subject of litigation, affecting only the parties to the particular controversy, and finally settles that controversy. * * * The order overruling the motion of the Brush Electric Company to dismiss the cause as to it does seem to have been the final determination of a most important question, collateral in its character. In considering the motion, questions of fact and of law were involved. Distinct issues of both were presented. They were such as were not presented by the general issues in the case. These questions would not be again presented. They were not preliminary to the decree upon the merits, or involved in the decree upon the merits. The order determining the issues upon this motion we therefore hold was a 'final decision,' within the meaning of the statute concerning appeals in this court above referred to, and was therefore the subject of an appeal thereunder."

In McGourkey v. Toledo & Ohio Railway, 146 U. S. 536, 13 Sup. Ct. 170, 36 L. Ed. 1079, there is a review by Mr. Justice Brown of the preceding cases on the subject of what constitutes a final decree. This case, and the other cases above referred to, certainly make it clear that a decision in any particular proceeding which disposes of the whole matter litigated in that proceeding, and leaves nothing thereafter to be done except the ministerial act of executing it, is a final decree or final judgment in that proceeding, and one which may be reviewed on appeal or by writ of error.

In the case at bar the order of the Circuit Court was to produce the books before the trial of the action at law as well as at the trial. It was made pursuant to the petition of the plaintiff in the principal suit, who averred that the books contained evidence pertinent to the issue. The answer to the petition presented issues upon several questions of law. The proceeding thus instituted and carried on was one

collateral to the principal suit, though in aid of it. There is but one defendant in the principal suit, and that is the Pennsylvania Railroad Company. In the collateral proceeding the defendants are the Pennsylvania Railroad Company and 12 other parties. It is those 12 other parties who have sued out the writ of error. The order of the Circuit Court is, in effect, one overruling the answer, which is an answer in the nature of a demurrer to the petition, and directing the defendants mentioned in the petition, other than the Pennsylvania Railroad Company, which company is not included in the order, to produce the books and papers, not only at the trial of the action at law, but before the trial for the inspection of the counsel and agents of the plaintiff company.

We think this case is plainly distinguishable from Alexander v. United States, 201 U. S. 117, 26 Sup. Ct. 356, 50 L. Ed. 686, in which the order appealed from was held to be an interlocutory order. There Alexander was directed by the court to appear before an examiner, in an equity suit, and produce certain books and answer the questions propounded to him by the complainant's counsel. He was a mere witness in the trial of the suit before the examiner. He was required, under equity rule 67, to answer all questions propounded to him. It was the duty of the examiner under that rule to take all the evidence, noting the objections thereto. Blease v. Garlington, 92 U. S. 1, 23 L. Ed. 521; Nelson v. United States, 201 U. S. 92, 114, 26 Sup. Ct. 358, 50 L. Ed. 673. In every such case the customary rule is applicable that there is nothing from which a witness can appeal before he has been adjudged guilty of contempt. But in the case at bar the petitioner does not seek to secure evidence from a witness in the trial of the action at law, but to compel a discovery by the defendants in the collateral proceeding before the trial of the action at law. The procedure authorized by section 724 is wholly statutory. It prescribes the penalty, and the only penalty, for nonproduction, which is judgment in the action at law against the defaulting party. No judgment of contempt can be rendered in such a case. Merchants' National Bank v. State National Bank, Fed. Cas. No. 9,448, 3 Cliff. 201.

We also think that the case of Logan v. Pennsylvania Railroad Company, 132 Pa. 403, 19 Atl. 137, is distinguishable from the one now in hand. In that case an order was made requiring a party to an action at law to produce papers at the trial. The procedure was under the provisions of an act of the legislature of Pennsylvania approved February 27, 1798, which was evidently modeled upon section 15 of the federal judiciary act of September 24, 1789, (1 Stat. 82, c. 20 [U. S. Comp. St. 1901, p. 583]), now section 724 of the Revised Statutes. The order was made previous to the time fixed for trial, and an appeal was taken from it. The Supreme Court held that the order was merely interlocutory, and therefore not one from which an appeal would lie. Inasmuch as the order in that case was to produce papers at the trial of the action, and not before the trial, it seems clear that the appellant should have reserved his objections to the order until the time of trial. The rulings of the court then made would have been subject to exceptions and could have been reviewed on a writ of error bringing up

the final judgment. The case is not an authority for dismissing the writ of error now before us.

Our conclusion on the motion to dismiss the writ of error is that as the plaintiffs in error have been subjected to the jurisdiction of the Circuit Court and made liable to its order in a proceeding collateral to and independent of the action at law, and as the order is a decision of all the matters involved in that proceeding, and leaves nothing to be done except the ministerial act of executing it by producing the books of the defendant company both before and at the trial of the action, it is, in so far as it requires production before the time of trial, a "final decision" reviewable on a writ of error.

We turn, then, to the consideration of the questions presented by the assignment of errors. The first of these questions is: Are the plaintiffs in error "parties" within the meaning of section 724? In an action at law, if a corporation be a party, a discovery in aid of the action may be obtained by filing in chancery a bill against the corporation and its officers. The officers may be joined in the equity suit because the corporation can answer only under its seal, while the officers are required to answer under oath. In the present case the petitioner has sought to invoke that practice. The argument on behalf of the petitioner is that the officers of the corporation are required to produce its books, not as individuals, but as representatives of the corporation. But section 724 does not authorize such practice. The language is that the federal courts may require "the parties"—that is, the parties to an action at law—to produce books or writings at the trial of the action. In Rose v. King, 5 Serg. & R. 241, the Supreme Court of Pennsylvania, dealing with an order made under the Pennsylvania statute above referred to, declared that there was no power under that statute to require a third person, not a party to the record of the case, to produce books or papers at the trial of the action. In construing section 724 of the federal statutes, the same rule was followed in Ridgely v. Richard (C. C.) 130 Fed. 387. As the plaintiffs in error in the present case are not parties to the action at law, their failure to obey the order directed to them could furnish no warrant for awarding judgment by default against the defendant in that action. The order is therefore void, and for this reason must be reversed.

This point, however, relates merely to a technical defect in the procedure that may be corrected by an application to the Circuit Court for a new order directed to the defendant company, and not to its officers. If a new order be applied for, and the defendant be required to produce its books for the inspection of the plaintiff's agents before the trial of the action, another writ of error may be taken to bring up that order, and thus the trial of the action may be greatly delayed. We have, therefore, considered the second question, fully argued by counsel, which is: Has the Circuit Court the power under section 724, to order a party to produce its books or papers before the time of trial? The decisions of the Circuit Courts are divided on the question; the larger number doubtless being in favor of the exercise of the power. The section is substantially in the same form as when it was first enacted as section 15 of the judiciary act of 1789. In 1789 the parties to an action at law were not admissible as witnesses, and did not be-

come so in our federal courts until 1864, when section 858 of the Revised Statutes [U. S. Comp. St. 1901, p. 659] was first enacted. By the old practice a party in an action at law might give notice to his adversary to produce at the trial any document containing evidence pertinent to the issue, shown to be in his adversary's possession, and, if it were not produced, might give, if he were able to do so, secondary evidence of its contents. There was no difference in this respect between civil and criminal actions. Attorney General v. Le Merchant, decided in 1772, and King v. Watson, decided in 1788, 2 T. R. 201. The party receiving such notice could not be compelled to produce, and was not liable to punishment if he failed to produce. The only consequence of failure to produce was that secondary evidence, if available, could be admitted. But if a party in an action at law desired to prove at the trial the contents of documents in the possession of his adversary, and was not able to produce secondary evidence of those contents, then he could file in chancery a bill against his adversary to compel him to disclose those contents under oath either by answer setting forth the contents in full, as was the earlier practice, or, as was the later practice, by appending to his answer a schedule containing a specific description of the documents in his possession the discovery of the contents of which was sought. In the latter case an order could be secured from the chancellor requiring the defendant to leave the documents with a designated officer for the inspection of the complainant. In Crowley v. Perkins, 5 Sim. 552, decided in 1832, the defendant to a bill for discovery in aid of an action at law was ordered to produce at the trial of the action at law certain documents which in his answer he admitted were in his possession. This order, however, was declared in Brown v. Thornton, 1 Myl. & C. 243, to have been without authority. In the latter case the court held that, on a pure bill for discovery in aid of an action at law, all the court of chancery can do is to compel the discovery; that the proceeding ends when the discovery is made; that no decree is entered thereon; that the defendant is then entitled to his costs; and that the complainant, having obtained the discovery, is left to make the best use of it that may be permitted by the court having jurisdiction of the action at law. In a case in chancery where a bill is filed for equitable relief and also for discovery in aid of that relief, the chancellor has always had the power, subject to certain exceptions not now necessary to be mentioned, to order documents in the possession of one of the parties to be produced on final hearing, or before the examiner who takes the evidence for final hearing, or even at any time after the filing of an answer. 3 Dan. Chan. Pl. & Pr. (1st Am. Ed.) 2064; Utah Const. Co. v. Montana R. Co. (C. C.) 145 Fed. 981; Herbert v. Dean & Chapter of Westminster, 1 P. Williams, 773; Bettison v. Farringdon, 3 P. Williams, 363.

It is to be observed, then, that previous to 1789 a discovery by a party to an action at law could have been obtained only by the filing of a bill in chancery. That court had the power, in every such case, and also in every case for discovery and full relief in chancery, to compel the production of documents. On a pure bill for discovery in

aid of an action at law, the power was exhausted when the documents were produced and the discovery made. On a bill for discovery and relief, the documents might be required to be produced either before or at the final hearing. The commentaries of Sir William Blackstone appeared a few years previous to 1789. That learned expounder of the principles of the common law (3 Black. Comm. 382), in speaking of defects in the trials of actions at law, mentioned, first, the want of a complete discovery by the oath of the parties, saying:

"It seems the height of judicial absurdity that in the same cause, between the same parties, in the examination of the same facts, a discovery by the oath of the parties should be permitted on one side of Westminster Hall, and denied on the other; or that the judges of one and the same court should be bound by law to reject such a species of evidence, if attempted on a trial at bar, but, when sitting the next day as a court of equity, should be obliged to hear such examination read, and to found their decrees upon it."

The second defect mentioned by him was stated in these words:

"A second defect is of a nature somewhat similar to the first—the want of a compulsive power for the production of books and papers belonging to the parties. In the hands of third persons they can generally be obtained by rule of court, or by adding a clause of requisition to the writ of subpœna, which is then called a 'subpœna duces tecum.' But, in mercantile transactions especially, the sight of the party's own books is frequently decisive; as the daybook of a trader, where the transaction was recently entered as really understood at the time, though subsequent events may tempt him to give it a different color. And, as this evidence may be finally obtained, and produced on a trial at law, by the circuitous course of filing a bill in equity, the want of an original power for the same purposes in the courts of law is liable to the same observations as were made on the preceding article."

The author of the judiciary act of 1789 is supposed to have been Oliver Ellsworth. Virginia v. Rives, 100 U. S. 313, 338, 25 L. Ed. 667. That he was influenced by these criticisms of Blackstone in embodying in that act powers theretofore exercised only by the chancellor seems very probable from the following excerpt from Maclay's Journal (page 92) concerning the procedure before the United States Senate, when that body, sitting as a Committee of the Whole, were considering the act:

"Up now rose Ellsworth, and in a most elaborate harangue supported the clause [the clause requiring a defendant on oath to disclose his knowledge of the case, which was subsequently stricken out], now in chancery, now in common law, and now common law again with a chancery side. He brought forward Judge Blackstone and read much out of him. Patterson rose in reply and followed him through these thorny paths, I thought, with good success. He showed, justly enough, that Blackstone cut both ways, and nothing could be inferred from him but his ridiculing the diversity of practice between chancery practice and that of the common law."

But, whatever influences may have led to the framing of section 15 of the original judiciary act, the question now presented is whether it was the object of that section to give a complete or only a partial substitute for the chancery proceeding. It seems to have been the first statutory provision in England or in this country extending to courts of law the power of a court of chancery to compel a party to produce documents. In some of our states similar legislation was soon adopted, but it was 62 years before any such power was given to the

courts of law in England. 1 Thomp. on Trials, § 731. The section authorizes the federal courts to make orders for the production of books or writings, not "in actions at law," not "in proceedings in actions at law," but "in the trial of actions at law." Bearing in mind that a court of chancery had the power to require a party to produce books or writings in a case in which that court was called on to administer relief as well as to compel discovery, either before or at the final hearing, the language of the section now under review seems to be restrictive. One of the first cases in which it came before a court for consideration was Bas v. Steele, 3 Wash. C. C. 381, Fed. Cas. No. 1,088. In that case Mr. Justice Washington, sitting in circuit for the district of Pennsylvania, in 1818, after considering other questions, said:

"The remaining point is important and novel, and has not yet been decided in the Supreme Court, in this court, or in any other Circuit Court, so far as we are informed  It is not difficult to give a construction to the section of the act of Congress. When either party wants papers, he must give notice; and he has in view one of these objects:  (1) That, if the papers called for are not produced, he may be enabled to argue against the party not producing them to the jury; (2) this object may be to obtain evidence from the contents of the papers called for; and (3) to move the court for a nonsuit, or for a judgment by default, as the case may be. But in either case, the party must entitle himself to the benefits of the section by showing that the party was in possession of the papers called for, and he must also give evidence of the contents of the papers; for it will not do for him only to say what those contents are. The court will require reasonable proof of the possession, and of the pertinency of the papers. If the object of the party is to avail himself of the provisions of the section, so as to move for a nonsuit, or for judgment by default, he must put the party on his guard, and let him know the consequences of a refusal, and the party receiving such notice will come prepared to meet it. In any such case, when the party is called on to produce papers, he may make oath that he has them not, and thus extricate himself from difficulty. This is the case in chancery, where the plaintiff charges the defendant with having papers to which he has a right, and the defendant relieves himself by his oath; and this may be met by contrary proof of two witnesses. In every case, the party claiming the papers must give evidence of the relevancy of the papers, and of the opposite party having possession of them. Whenever a judgment by default, or a nonsuit, is intended to be claimed, the notice to produce papers must give the party information that it is intended to move for a nonsuit, or a judgment by default, as the case may be; and this must hereafter be considered as the rule of the court under this section of the act of Congress."

In Dunham v. Riley, 4 Wash. C. C. 126, Fed. Cas. No. 4,155, Mr. Justice Washington, in 1821, followed Bas v. Steele, and added that the court did not in that case decide whether the order to produce papers should be absolute in the first instance. He said:

"We think it need not be so, but that upon the rule to show cause it may be made nisi, leaving the court at liberty to enforce the rule, unless the plaintiff can show, at the trial, good cause for not producing them. If the rule be made absolute at the time when it is argued, the court might have to go prematurely into an inquiry into the case, in order to decide whether the order should be absolute or not. If the case should be simple, and such inquiry should not appear to be necessary, the court may at once discharge, or make the rule absolute."

In that case the argument was on a rule upon the plaintiff requiring him to show cause why he should not be required to produce certain

books, papers, and accounts at the trial of the action. Justice Washington granted a rule nisi.

In Iasigi v. Brown, Fed. Cas. No. 6,993, 1 Curt. 401, decided in 1853, Mr. Justice Curtis, sitting in circuit for the district of Massachusetts, said:

"By the common law a notice to produce a paper merely enables the party to give parol evidence of its contents, if it be not produced. Its nonproduction has no other legal consequence. This act of Congress has attached to the nonproduction of a paper ordered to be produced at the trial, the penalty of a nonsuit or default. This is the whole extent of the law. It does not enable parties to compel the production of papers before trial, but only at the trial, by making such a case and obtaining such an order as the act contemplated. * * * The application for such an order may be made, on notice, before trial. There is a manifest convenience in allowing this. But, at the same time, I think the court should not decide finally on the materiality of the paper, except during the trial, because it would occupy time unnecessarily, and it might be very difficult to decide beforehand whether a paper was pertinent to the issue, and whether it was so connected with the case that a court of equity would compel its production. These points could ordinarily be decided without difficulty during a trial after the nature of the case and the posture and bearings of the evidence are seen."

It was further said in this case that the correct practice seems to be that, after the moving party has made a prima facie case for such an order, he shall enter an order nisi, leaving it for the other party to show cause at the trial.

As already stated, a number of cases may be cited in which orders to produce books or writings before trial were made. The most exhaustive review of the decisions on both sides of the question contained in any single case is to be found in Bloede Co. v. Bancroft & Sons Co. (C. C.) 98 Fed. 175. In that case it was held that a federal court may make an order to produce before the trial. In the opinion of the learned judge who decided that case there is, however, no reference to Bas v. Steele or to Dunham v. Riley. The penalty incurred by one who fails to produce books under an order made pursuant to section 724 may be a judgment in the action against him. If the order be to produce at the trial, and the party against whom it is made fails to comply therewith, or, producing the books, insists that they are not admissible, the ruling of the court awarding judgment against the defaulting party for nonproduction, or its ruling on the question of the admissibility of the books, may be the subject of a bill of exceptions and be reviewed on a writ of error bringing up the final judgment in the action. But if the order be to produce before the trial, and the party against whom it is made defaults, how can judgment of nonsuit or judgment by default be entered? A judgment must be founded on a record that will support it. An order to produce before the trial constitutes, at common law, no part of the record of the action. Neither can it be excepted to. It is well-settled practice in our federal courts that the assignments of error in an action at law are founded only on the record of the case and the bill of exceptions taken in the course of the trial. Storm v. United States, 94 U. S. 76, 24 L. Ed. 42; Suydan v. Williamson, 20 How. 433, 15 L. Ed. 978; New Orleans Railroad v. Morgan, 10 Wall. 261, 19 L. Ed. 892; Insurance Co. v. Piaggio, 16 Wall. 386, 21 L. Ed. 358. Originally the record of an action at law

consisted only of the process, pleadings, verdict, and judgment, and the only errors reviewable on a writ of error were those apparent on the face of such a record. 3 Ency. Pl. & Pr. 378. By St. 13 Edw. I, c. 31, authority was given to take bills of exceptions to the rulings of judges at trials. Bacon's Abridg. Tit. "Bill of Exceptions"; Bulkeley v. Butler, 2 B. & C. 434, 444; Pomeroy's Lessee v. Bank of Indiana, 1 Wall. 592, 599, 17 L. Ed. 638; Wheeler v. Winn, 53 Pa. 122, 126, 91 Am. Dec. 186. In some of our states an order striking out pleadings before issue joined, and the like, may now, by statute, be incorporated in the record of an action at law so as to be reviewable on a writ of error. In New Jersey, where, as in the federal courts, the common-law practice prevails, it has been held that, if a plea be struck out as sham or frivolous, the order cannot be reviewed on a writ of error for the reason that it constitutes no part of the record. In Brown v. Warden, 44 N. J. Law, 177, the highest court of that state said:

"The right to overrule and suppress pleadings as sham and frivolous has existed in the superior courts of common law from time immemorial, and no attempt has ever been made before the present occasion to place such incidental orders for review before an appellate court."

The tenacity with which the federal courts hold to the common-law practice on writs of error is well illustrated by the cases of Campbell v. Boyreau, 62 U. S. 224, 16 L. Ed. 96, and Andes v. Slauson, 130 U. S. 435, 9 Sup. Ct. 573, 32 L. Ed. 989. And in Wright v. Hollingsworth, 1 Pet. 168, 7 L. Ed. 96, it was said:

"The allowance and refusal of amendments in the pleadings, the granting or refusing new trials, and indeed, most other incidental orders made in the progress of a cause, before trial, are matters so peculiarly addressed to the sound discretion of the courts of original jurisdiction as to be fit for their decision only under their rules and modes of practice. This, it is true, may occasionally lead to particular hardships; but, on the other hand, the general inconvenience of this court attempting to revise and correct all the intermediate proceedings in suits between their commencement and final judgment would be intolerable."

See, also, Ex parte Crane, 5 Pet. 199, 8 L. Ed. 92; Evans v. Stettnisch, 149 U. S. 607, 13 Sup. Ct. 931, 37 L. Ed. 866.

To what extent the statutory practice in some of our states of allowing interlocutory orders to be incorporated in the record of an action at law, and error to be assigned thereon, may be permitted in our federal courts under the provisions of section 914 of the Revised Statutes [U. S. Comp. St. 1901, p. 684], it is not now necessary to decide; for no act of the Legislature of the state of Pennsylvania has been referred to, nor have we knowledge of any statute of that state, which provides that an order requiring a party in an action at law to produce books for the inspection of his adversary before trial may be incorporated in the record of the action, or that error may be assigned thereon. So far as we are aware, no such practice in the courts of the state of Pennsylvania exists. And Congress has prescribed no such practice for the federal courts. It seems clear, therefore, that if a party who is ordered to produce books before trial defaults, and a judgment is entered against him merely for that reason, the judgment would necessarily be reversed, on error, for want of a record to support it. A con-

struction of section 724 which limits the power of the court to an order to produce books at the trial leaves the party against whom the order is made in a position where he may take exceptions to the rulings of the court at the trial, requiring obedience to the order, or concerning the admissibility of the books, and thereby secure a record on which a writ of error will operate. But an order to produce before trial, if it be disobeyed, will be wholly nugatory, for the reason that the penalty prescribed by the section—the entry of judgment against the disobedient party—cannot be lawfully imposed. If this be not so, then an erroneous ruling of the court made at the trial upon an order to produce at the trial may be corrected by an appellate tribunal, while it cannot be in the case of an erroneous ruling concerning an order to produce before trial. A construction leading to such diverse results does violence to the language of the section which authorizes an order to produce only "in the trial of actions at law." We conclude, therefore, that section 724 does not confer the power to require a party to produce books before trial. If a party to an action at law desires inspection of books in his adversary's possession before trial of the action, he is left to his chancery remedy by filing his bill for discovery.

The third question is: May the defendant in a civil action brought to recover damages for a violation of any of the provisions of the interstate commerce act be required, under section 724, to produce its books even at the trial? It is insisted by the plaintiffs in error that this case falls within the operation of the general rule that equity will not compel a party to disclose facts which would tend to expose him to criminal punishment, or to penalties, fines or forfeitures, and that as no order requiring parties to produce books can be made under the authority of section 724, except "in cases and under circumstances where they might be compelled to produce the same by the ordinary rules of proceeding in chancery," the order now under review, even in so far as it requires production of books at the trial, is void. Section 8 of the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 382 [U. S. Comp. St. 1901, p. 3159]) provides that a common carrier violating any of its provisions "shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this act, together with a reasonable counsel fee or attorney's fee to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case." And section 10 (24 Stat. 382 [U. S. Comp. St. 1901, p. 3160]) provides that any common carrier that shall willfully violate any of the provisions of the act, or shall be guilty of any infraction of it, "shall be deemed guilty of a misdemeanor," and subject to a fine not exceeding $5,000 for each offense. If the books of a defendant will tend to prove a particular violation of the act in a civil case instituted under the authority of section 8, they will also tend to prove the same violation in a criminal case founded on section 10.

But a corporation is not a natural person. It is a creature of the state. It possesses no powers or franchises except those conferred upon it by the state. When it accepts its charter from the state, it voluntarily subjects itself to all the obligations and duties constitutionally imposed upon it by the state. So, when it engages in interstate

commerce, it is subject to all the regulative provisions concerning such commerce constitutionally prescribed by Congress. Whether it may not, in a case like the present one, be compelled to produce its books and papers at the trial of a civil action against it, even if such production shall disclose criminal acts by it, is a question that has not been argued. There is, also, in this connection, another question that has not been argued, and that is whether a corporation, in a case like this, may refuse to produce its books or papers because of the provision of the fourth amendment of the Constitution against unreasonable searches and seizures, or of the provision of the fifth amendment that no person shall be compelled to be a witness against himself. In Hale v. Henkel, 201 U. S. 43, at page 70, 26 Sup. Ct. 370, 377, 50 L. Ed. 652, Mr. Justice Brown said:

"The question whether a corporation is a 'person' within the meaning of this [the fifth] amendment really does not arise, except, perhaps, where a corporation is called upon to answer a bill of discovery, since it can only be heard by oral evidence in the person of some one of its agents or employees."

On pages 75 and 76 of 201 U. S., on page 379 of 26 Sup. Ct., he said:

"Although, for the reasons above stated, we are of the opinion that an officer of a corporation which is charged with the violation of a statute of the state of its creation, or of an act of Congress passed in the exercise of its constitutional powers, cannot refuse to produce the books and papers of such corporation, we do not wish to be understood as holding that a corporation is not entitled to immunity, under the fourth amendment, against unreasonable searches and seizures."

On page 77 of 201 U. S., on page 380 of 26 Sup. Ct., Mr. Justice Harlan declared that, in his opinion, a corporation is not embraced by the word "persons" in the fourth amendment. On pages 82 and 83 of 201 U. S., on page 382 of 26 Sup. Ct., Mr. Justice McKenna leaves open the question whether a corporation can claim immunity under either the fourth or the fifth amendment. And on page 88 of 201 U. S., on page 384 of 26 Sup. Ct., Mr. Justice Brewer says that:

"The fact that a state corporation may engage in business which is within the general regulating power of the national government does not give to Congress any right of visitation or any power to dispense with the immunities and protection of the fourth and fifth amendments."

These varying expressions of opinion emphasize the impropriety of any expression of opinion by us, on the third question above stated, before counsel shall have given us the aid of full arguments thereon. Furthermore, the question is not now properly before us. Objections to an order to produce books at the trial should be made, as in the case of a subpœna duces tecum, at the trial, when, as already shown, exceptions to the rulings of the trial court may be taken as the foundation of a writ of error bringing up the final judgment in the action.

The fourth question is: Is not the order of the Circuit Court void for failure to describe with sufficient definiteness the books and papers required to be produced? And the fifth, and last, question is: Is not the order erroneous because of the allegation of the defendant that its books have not been so kept as to show what rebates, drawbacks, compensations, or concessions it has allowed to the several parties

named in the plaintiff's petition? Neither of these questions is now properly before us. Like the third question, they may, perhaps, be properly raised on an order directing the defendant corporation to produce its books at the trial of the action, but even in such case they can be raised only at the trial.

Having reached the conclusions above expressed, it follows that the motion to dismiss the writ of error must be denied, and that the judgment of the circuit court must be reversed, with costs, and it is so ordered.

BUFFINGTON, Circuit Judge (dissenting). This court in my judgment, has no jurisdiction on this writ of error. I therefore dissent. In the Circuit Court the Mitchell Coal & Coke Company brought suit against the Pennsylvania Railroad Company to recover damages for alleged violations of the interstate commerce act. On petition of the coal company, and in pursuance of alleged power under Rev. St. § 724, that court, after hearing on answer made by the Pennsylvania Railroad Company alone (the plaintiffs in error making no answer or objection), ordered that certain books and records of that company be produced by its officers at the trial and also prior thereto at the railroad company's own office for inspection and making copies thereof. This order the railroad company neither excepted to or appealed from. That such an order was interlocutory and not appealable is held in Logan v. Pennsylvania R. R. Company, 132 Pa. 403, 19 Atl. 137, a decision adopted in Alexander v. United States, 201 U. S. 122, 26 Sup. Ct. 356, 50 L. Ed. 686. To the entry of such order, however, the plaintiffs in error, who were the officers of the railroad company named in the order, excepted as individuals, and have removed to this court by writ of error the record in the case. Now, these plaintiffs in error have no property in the books, being the mere custodians thereof as officers of the railroad. They made no answer in the proceedings below. Their rights were not involved, considered, or adjudicated, and no disclosures are now sought from them. Indeed, as mere custodians of the books and papers in question as officers of the railroad, they bear an even more remote relation to the case below than did the plaintiffs in error in Nelson v. United States, 201 U. S. 115, 26 Sup. Ct. 358, 50 L. Ed. 673, of whom it was said:

"These writs of error are not prosecuted by the parties in original suit, but by witnesses, to review a judgment of contempt against them for disobeying orders to testify. Being witnesses merely, it is not open to them to make objections to the testimony. The tendency or effect of the testimony on the issue between the parties is no concern of theirs. The basis of their privilege is different from that, and entirely personal."

Seeing, then, that these plaintiffs in error are not parties to the case between the coal company and the railroad company, they are not concerned in that controversy or affected by its disposition. It is clear that their controversy is wholly one between them and the sovereign power acting through one of its courts (Alexander v. United States, supra), which court has ordered them, as officers of a third party, to produce certain books of such third party in their custody. And it is equally clear that that court has yet made no order against them in that

regard which is final. The order to produce in no way affects their liberty, their property, or their liability. It is no more final than a subpœna, with a duces tecum clause directing them to produce documents in their possession, would be. An attachment for contempt is requisite to constitute a final and appealable decree in case of a subpœna of that character. Alexander v. United States, supra. It is urged, however, that under Rev. St. § 724, the Circuit Court cannot enforce its order to produce by an adjudication for contempt for nonproduction, and that, because it cannot attach, an order to produce is the last order the court can make, and therefore a final one. Not only is this a non sequitur, but that a Circuit Court is powerless to enforce by attachment for contempt an order which by statute it is empowered to make, is a proposition I am not yet prepared to concede, if that question were before us. In that connection it suffices to say that if the construction placed on this statute by Mr. Justice Washington in Bas v. Steele, 3 Wash. C. C. 381, Fed. Cas. 1,088, be correct, namely, that the objects of the statute are not only to lay grounds for a judgment of default, but also "to obtain evidence from the contents of the papers called for," it may well be contended that the Circuit Court under its general powers as a court can by attachment compel production of that evidence which it was the object of the statute it should obtain. But assuming, for present purposes only, the court has no power to attach, it by no means follows that the mere order on such a custodian of papers as here to produce is a final decree simply because the court can do no more. Such order lacks all the elements of a final, reviewable decree. It subjects such custodian agent to no liability either in person or property. He is not concluded, affected or harmed by such order. It enters no judgment, default, lien, or decree against him. It subjects him to no penalty, and he is not aggrieved thereby. But, apart from this, if the only power the court has under this statute is to enter a judgment by default, then the entry of such default and the liquidation of a judgment is the final decree under the act which makes the case appealable, and then the appeal is by the party aggrieved and not by the mere custodian of such party's books and records. No judgment by default having been entered and liquidated, it follows that no final, appealable decree was entered. To entertain this writ is to concede to a stranger to the controversy higher rights than the litigants themselves possess. Whether this order to produce is valid, whether it warrants a judgment by default against the defendant, are matters in which these plaintiffs in error have no concern. If the court below finally entered judgment on default in that case, these questions could be properly subjected to review by the aggrieved party, the Pennsylvania Railroad. But in advance of that time these plaintiffs in error—whether they seek to do it as mere individuals or as officers of that company—cannot, under cover of an alleged final decree in a mere order to produce, confer on this court by indirection a jurisdiction to review in a preliminary stage questions between the coal and railroad companies which neither of said companies can have reviewed until final decree.

For these reasons, I would dismiss this writ of error for want of jurisdiction.